EDWARDS, Judge.
Charles R. Banta, III, was charged by grand jury indictment with six counts of felony theft, violations of La.R.S. 14:67 B.(2), and two counts of misdemeanor theft, violations of La.R.S. 14:67 B.(3). Defendant pled not guilty. The misdemeanor theft counts were severed for trial. After a jury trial, defendant was found guilty of all six counts of felony theft. He was sentenced to two years at hard labor and to pay a fine of $250 on each count, for counts 1, 2, 3 and 4; these sentences were to run concurrently. For counts 6 and 8, defendant received sentences of two years at hard labor, to be served consecutive to each *1089 other and consecutive to the sentences in counts 1, 2, 3, and 4. Furthermore, the sentences on counts 6 and 8 were suspended; and defendant was placed on supervised probation for a period of five years, commencing upon his release from the custody of the Department of Public Safety and Corrections and subject to certain special conditions.
Defendant appealed, urging the following assignments of error:
I. The trial court erred when it failed to exclude Brady material which was elicited from a key fact witness whose testimony was unknown and unavailable to the defense prior to trial.
II. The evidence at the trial of this matter was insufficient to sustain a verdict of theft.
III. The trial court erred when it erroneously charged the jury regarding the burden of proof necessary to convict Mr. Banta of felony theft pursuant to Cage v. Louisiana.
FACTS
Charles R. Banta, III, was a Lafourche Parish councilman who was appointed by the Lafourche Parish Council to serve as a liaison with the state legislature. During May, June, and July of 1988, defendant submitted several expense account forms for reimbursement of expenses which he claimed he had incurred. Defendant attached receipts of meals to these expense forms. At trial, defendant admitted that some of these meal receipts were neither incurred, nor paid for, by him, and others were for meals which he did eat, but to which he added amounts to the actual price paid. The defendant was reimbursed for the amounts represented on his expense forms through voucher checks, and he subsequently cashed these checks. Payment through six voucher checks for reimbursement of these falsified expenses serves as the basis for the felony theft charges against defendant.
During his trial testimony, defendant explained that the amounts claimed as meals were actually expenses he incurred for food and alcohol which he purchased for a hospitality suite at a 1988 Police Jury Convention, alcohol and supplies for “La-fourche Day” held at the State Capitol, and for fresh shrimp that he bought and gave to the legislators. Defendant claimed that Dr. Vernon Galliano, the parish council president, had told him to recoup these expenses by adding them to his “meal tickets.” Defendant admitted that he was having financial difficulty during the same time period, and that he had filed bankruptcy in September of 1988.
Dr. Galliano testified that he never advised the defendant to file false expense claims or false meal receipts. He stated that when the defendant had asked him how to recover for expenses, he told defendant to recoup his expenses for shrimp by listing it as food or seafood on his expense account.
EXCULPATORY EVIDENCE
In Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 1196-1197, 10 L.Ed.2d 215 (1963), the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused which has been requested violates due process where the evidence is material to guilt or punishment. Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A “reasonable probability” is a probability sufficient to undermine confidence in the outcome. U.S. v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985); State v. Rosiere, 488 So.2d 965, 970-971 (La.1986).
Prior to trial, Dr. Galliano gave a sworn statement to the District Attorney’s Office regarding the charged offenses. Defendant contends that the trial court erred in conducting an in camera inspection of the pretrial statement which Dr. Galliano had given to the District Attorney’s Office and in ruling that the statement did not contain Brady material. In brief, defendant further argues that the failure of the trial court to disclose Dr. Galliano’s statement deprived him of the opportunity to present “his most potent defense.”
*1090 Prior to trial, the assistant district attorney (ADA) stated in open court that statements were taken from all council members. The ADA stated he did not believe there was any exculpatory material in the statements but suggested that the trial court conduct an in camera inspection. During the trial, the trial court stated that it had examined ¿the council members’ statements and ruled that they did not contain exculpatory material; therefore, disclosure was not required. During the state’s rebuttal, after testimony of Dr. Gal-liano, defense counsel made a motion for mistrial based upon his argument that Dr. Galliano’s admission at trial that he told defendant to “put the shrimp and seafood as food in his expense account” probably had been a part of Dr. Galliano’s statement to the ADA, and constituted Brady material. The trial court denied defendant’s motion for mistrial. Following the trial and prior to sentencing, defendant" filed a motion for new trial based upon the belief that the state failed to disclose Brady material in Dr. Galliano’s statement. The trial court denied the motion for new trial.
We have reviewed Dr. Galliano's statement and find no error in the trial court’s ruling. The statement is consistent with Dr. Galliano’s testimony at trial. From our reading, we do not believe Dr. Galliano’s statement to defendant about recouping his expenses for the purchase of shrimp by putting the amounts on his expense account as food or seafood, in light of the evidence presented, constituted favorable evidence. Furthermore, under the Bagley analysis, the statement is immaterial. Since the evidence sought by defendant was actually introduced and heard by the jury at trial, we cannot say there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.
In brief, defendant argues that, had he known of the content of Dr. Galliano’s statement prior to trial, “the entire structure of the defense might have been different” and “Dr. Galliano may have been called in the defendant’s case in chief.” Defendant does not say his defense definitely would have been altered; nor does he state how the outcome of the case would have been different. Moreover, defendant has not shown that Dr. Galliano’s testimony would have been different if he had testified on defendant’s case in chief, rather than the state’s rebuttal.
The mere possibility that an item of undisclosed information might have helped the defense or might have affected the outcome of the trial does not establish “materiality” in the constitutional sense; the “reasonable probability” of a different outcome is required. See United States v. Bagley, 105 S.Ct. at 3383. On defendant’s conjecture alone, we cannot conclude that the production of Dr. Galliano’s statement would have led to a different trial result.
These assignments of error lack merit.
SUFFICIENCY OF THE EVIDENCE
By means of assignment of error number two, defendant contends that the evidence was insufficient to sustain these guilty verdicts. After trial, defendant filed a motion for post verdict judgment of acquittal based upon the same grounds. Specifically, he contends that the state failed to establish the value of the money taken and that the state failed to prove that he had the specific intent to permanently deprive the parish council of the money. Defendant contends, in brief, that the evidence only proved that he engaged in false accounting, a violation of La.R.S. 14:70, by requesting reimbursement in a manner inconsistent with his expenditures.
La.R.S. 14:67 A. provides:
Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
An essential element of the crime of theft is a specific intent to permanently deprive the victim of his property. Al *1091 though intent is a question of fact, it need not be proven as a fact; it may be inferred from the circumstances of the transaction and the actions of defendant. See La.R.S. 14:10 and former La.R.S. 15:445; State v. Crosby, 515 So.2d 570, 572 (La.App. 1st Cir.1987).
Herein, the evidence is sufficient to establish the defendant’s specific intent to deprive the parish of the money he received. The state presented proof on each count that defendant either did not pay for the meals supported by the receipts he attached or that he enlarged the amount of the meals for which he actually paid. Furthermore, defendant’s explanation for this action was not supported by Dr. Galliano’s testimony. Moreover, defendant’s own testimony indicates he did not know the specific amount he spent on items for which he was claiming reimbursement. When asked about the amount he spent on the catfish fillets for Lafourche Day, defendant replied, “I would imagine around a hundred or so dollars.”
Defendant does not deny that the forms included claims for meals for amounts greater than those which defendant incurred. Several of the receipts for meals were from Ruth’s Chris Steak House (Ruth’s). On cross-examination defendant acknowledged that these included accounts of him dining with legislators whom he saw at the restaurant but who were not in his dining party. To obtain receipts when he did not actually purchase a meal, defendant would ask a waitress for a blank cash receipt. Defendant would fill in these receipts with the date, amount of the meal, and the check number. Upon request by those law enforcement authorities investigating the case, employees of Ruth’s were able to locate the actual tickets for the check numbers on defendant’s receipts.
At trial, defendant testified that Dr. Gal-liano told him and another councilman, Kirk Cheramie, to show purchases of alcohol as food. He stated that during the Lafourche Day event he gave Kirk Chera-mie $200-$300 to purchase liquor and he went himself to purchase more alcohol and soft drinks. In addition, defendant testified that he purchased seafood from Daniel Lorraine and other roadside vendors on several occasions to bring to legislators. He stated that he brought nine or ten ice chests of seafood to legislators. Defendant further testified that he spent about $500 on this seafood during June and July of 1988. Defendant also stated that Dr. Galliano advised him to add amounts to his “meal ticket” to obtain reimbursement for any Lafourche Day expenses, for seafood brought to the legislators, and for a large stainless steel pot, basket and burner owned by defendant and used during the Lafourche Day event. These items, which were presumably stolen, were worth about $190.
With the exception of a check payable to Daniel Lorraine dated July 9, 1988, in the amount of $120, defendant presented no receipts or documents to substantiate the amounts for which he claimed he was seeking reimbursement on his expense forms. He admitted he did not have receipts for the expenses incurred. When asked about his accounting system, defendant stated he “basically kept it in [his] head.” Furthermore, defendant did not present the specific figure that he spent on the seafood and on other items for which he claimed reimbursement and submitted false receipts. Thus, the state carried its burden of proof as to the element of specific intent.
As to the element of the value of the money taken, we find the evidence was sufficient to prove this element. As to Counts 1, 2, 3, 4, and 8, the state submitted expense account forms filed by defendant which listed a total sum for meals and included attached receipts from Ruth’s. As to the receipts for Count 1 defendant admitted he submitted the receipt in the amount of $167.62 but did not eat a meal for that amount. An employee of Ruth’s testified that their records indicate Jimmy Mayes actually paid the check number on the receipt submitted; Mr. Mayes’ trial testimony confirms this fact. Counts 2 and 8 relate to two separate receipts for two separate meals at Ruth’s. Defendant says he actually ate at Ruth’s and added the amount of $100 to the cost of each Ruth’s *1092 receipt on meals for his expense forms. However, Ruth’s records show that Dr. Thomas Kiebach paid for the check number listed on defendant’s receipt which serves as the basis for Count 2. Dr. Kiebach testified that he paid for the meal, and a receipt corroborated this testimony.
As to Count 3, a Ruth’s employee testified that the corresponding check number was for a meal amounting to $19.26 and paid in cash. Defendant’s receipt lists the cost of this meal to be $125.26. As to Count 4, defendant’s submitted receipt lists the cost of the meal as $156.87. When questioned about this meal and check number, defendant stated he could not remember. According to the testimony of a Ruth’s employee, their records were reviewed and it was determined that this check number was not served.
As to Count 6, defendant submitted a receipt for the amount of $124.91 for a meal at O’Donahue’s in Baton Rouge. However, an employee of O’Donahue’s testified that the establishment is a lounge and does not serve food. Defendant’s explanation for this receipt was that he was directed by Dr. Galliano to submit his expenses in this manner.
Given the testimony and documents submitted, we find the state proved the value of the amount in each count.
Thus, this assignment of error lacks merit.
JURY INSTRUCTION
By assignment of error number three, defendant argues that the trial court’s jury instruction regarding reasonable doubt was erroneous. He contends that based upon Cage v. Louisiana, — U.S. —, 111 S.Ct. 328, 329-330, 112 L.Ed.2d 339 (1990), and State v. Mack, 403 So.2d 8 (La.1981), the jury charge was constitutionally defective.
At trial, prior to instructions to the jury, defense counsel objected to the proposed jury charge regarding reasonable doubt. The trial court stated that it did not believe the definition was prejudicial, confusing, or misleading to the jury and gave the proposed jury charge.
La.C.Cr.P. art. 804 provides, in pertinent part:
A. In all cases the court shall charge the jury that:
* * * * * *
(2) It is the duty of the jury, in considering the evidence and in applying to that evidence the law as given by the court, to give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence in the case; and
(3) It is the duty of the jury if not convinced of the guilt of a defendant beyond a reasonable doubt, to find him not guilty.
The court may, but is not required to define “the presumption of innocence” or “reasonable doubt” or give any other or further charge upon the same than that contained in this article.
In state criminal trials, the due process clause of the fourteenth amendment “protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.” Cage v. Louisiana, 111 S.Ct. at 329; In re: Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970); see also Jackson v. Virginia, 443 U.S. 307, 315-316, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979).
In the instant case the jury instruction provided in part:
It is the law that the State must prove in this courtroom to your satisfaction and beyond a reasonable doubt, that the defendant on or about the dates stated in the charges, in this parish and state, committed the offenses with which he is charged, or lesser included offenses. If the State failed to prove this to you beyond a reasonable doubt, then you cannot convict the defendant.
In other words if you now have a reasonable doubt arising out of the evidence, or lack of evidence, as to the guilt of the defendant, or (sic) any or all of the counts, it is your duty to give him the benefit of every reasonable doubt and find him not guilty. On the other hand, *1093 if you believe from the evidence and beyond a reasonable doubt that the defendant is guilty of any or all of the counts charged, or lesser included offenses, it is your duty to convict him.
To assist you in your consideration of this case I will define reasonable doubt. A reasonable doubt is not a mere possible doubt. It is an actual doubt. It is such a doubt as a reasonable person could have. It is a serious or sensible doubt such as one could give a good reason for. The State, however, was not required to prove guilt to an absolute certainty or beyond a shadow of a doubt. It is sufficient if from all of the evidence in the case you honestly believe that the State has proven the defendant to be guilty beyond a reasonable doubt. A doubt suggested to you by the cleverness of counsel or brought on by a feeling of sympathy for the defendant, or a doubt based on a merciful desire to permit the defendant to escape the just penalty of the law, is not the kind of doubt that I am talking about.
In Cage v. Louisiana, 111 S.Ct. at 329-330, the United States Supreme Court stated:
In construing the instruction, we consider how reasonable jurors could have understood the charge as a whole. Francis v. Franklin, 471 U.S. 307, 316, 105 S.Ct. 1965, 1972, 85 L.Ed.2d 344 (1985). The charge did at one point instruct that to convict, guilt must be found beyond a reasonable doubt; but it then equated a reasonable doubt with a “grave uncertainty” and an “actual substantial doubt,” and stated that what was required was a “moral certainty” that the defendant was guilty. It is plain to us that the words “substantial” and “grave,” as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard. When those statements are then considered with the reference to “moral certainty,” rather than evidentiary certainty, it becomes clear that a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause, (asterisk omitted)
The Court in that case found that the specific words “substantial” and “grave” suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard. That Court also particularity noted the phrase “moral certainty” which was used rather than the phrase “evidentiary certainty.” Based upon these phrases, the United States Supreme Court found a reasonable juror hearing the instruction in Cage could have interpreted the instruction to find defendant more guilty with less proof than is required under the due process clause.
However, the instant case is distinguishable from Cage. The trial court refers to “actual doubt,” not “actual substantial doubt,” as stated in Cage. Although the trial court also defined reasonable doubt as “serious or sensible doubt,” when reviewing the jury instruction as a whole we cannot say the defendant was prejudiced by confusion or that the jury was misled. See State v. Williams, 492 So.2d 1268, 1270 (La.App. 4th Cir.), writ not considered, 493 So.2d 1204 (La.1986). Additionally, we believe this jury instruction also complies with the mandate of State v. Mack, 403 So.2d at 11, that the. exact language of La.C.Cr.P. art. 804 be read to the jury in the instructions.
Furthermore, even if the reasonable doubt jury instruction was erroneous, the harmless error analysis would then be applicable to the instruction. Under this analysis, a trial error is harmless when the reviewing court is convinced that the error was harmless beyond a reasonable doubt, i.e., the error did not contribute to defendant’s conviction. See Arizona v. Fulminante, — U.S. —, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). Considering the entire record, there was sufficient evidence for the jury to convict defendant on each count. Thus, we conclude that this jury instruction, even if found to be erroneous, did not contribute to defendant’s convictions.
*1094 Thus, this assignment of error lacks merit.
PATENT ERROR
After reviewing the record for patent error, we have discovered a patent sentencing error caused by the trial court’s failure to give defendant credit for time served. See La.C.Cr.P. art. 880. Accordingly, we amend the sentences to reflect that defendant is to be given credit for time served prior to execution of his sentences. See La.C.Cr.P. art. 882 A. See also State v. Greer, 572 So.2d 1166, 1172 (La.App. 1st Cir.1990). Resentencing is not required. However, we remand the case and order the district court to amend the commitment and the minute entry of the sentencing to reflect that defendant is to be given credit for time served.
Additionally, in our review of this record, this court has noticed ex proprio motu, that the offenses of felony theft and misdemeanor theft were improperly joined in the same indictment.
La.C.Cr.P. art. 493 provides for the join-der of offenses as follows:
Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.
La.C.Cr.P. art. 782 A provides:
Cases in which punishment may be capital shall be tried by a jury of twelve jurors, all of whom must concur to render a verdict. Cases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict. Cases in which the punishment may be confinement at hard labor shall be tried by a jury composed of six jurors, all of whom must concur to render a verdict.
See also La.Const. art. 1, § 17.
However, since the misdemeanor offenses were severed prior to the commencement of the jury trial, no prejudice occurred to defendant. Thus, this error is harmless and shall not require reversal. La.C.Cr.P. art. 921.
CONVICTION AFFIRMED, SENTENCE MODIFIED, REMAND WITH ORDER.