697 So.2d 1355 (1997)
STATE of Louisiana
v.
Paul Jason ALBERT.
No. 96 KA 1991.
Court of Appeal of Louisiana, First Circuit.
June 20, 1997.
*1357 Martin J. Caillouet, Thibodaux, for Plaintiff-Appellee State.
Byrne W. Dyer, III, Gretna, for Defendant-Appellant Paul Jason Albert.
Before GONZALES and KUHN, JJ., and CHIASSON[1], J. Pro Tem.
REMY CHIASSON, Judge Pro Tem.
The defendant, Paul J. Albert, was charged by bill of information with theft in excess of $500, in violation of LSA-R.S. 14:67. He pled not guilty and, after trial by jury, was found guilty as charged.[2] The defendant received a sentence of four years at hard labor, with credit for time served. He has appealed, alleging five assignments of error,[3] as follows:

*1358 1. The trial court erred in granting the State's Prieur motion.
2. The trial court erred in denying the defendant's motion for a continuance.
3. The evidence was insufficient to support the instant conviction.
4. The defendant received ineffective assistance of counsel at trial.
5. The trial court erred in imposing an excessive sentence.

FACTS
On October 5, 1995, the defendant and Brian C. Holder, Jr., opened a business checking account for a fictitious law firm, Addington, McCall, and Sinclair. The defendant indicated that he was an attorney in the firm and used the name Alexander J. Addington.[4] Mr. Holder indicated that he was the accounting director for the firm. The defendant also opened a personal checking account. Both accounts were opened at a Metairie branch of the Bank of Louisiana. The law firm account never contained more than $800.00, and both accounts were frozen on October 12, 1995. In a one week period between November 17, 1995, and November 24, 1995, six checks on the fictitious law firm account were cashed at a Winn-Dixie store in Thibodaux, Louisiana. The first check was payable to Christain[5] Jenkins. Mr. Jenkins cashed this check as a favor for the defendant. Mr. Jenkins received $10 for gas money and the defendant also bought his dinner at Pizza Hut. The remaining five checks were cashed by the defendant under the name Jason Albert. All six checks, totaling in excess of $2,500.00, were returned to Winn-Dixie unpaid.
When Detective Kurt Harrelson of the Thibodaux Police Department contacted the defendant and questioned him about these checks, the defendant claimed that he was Alexander Addington and was in the process of having his name changed. When the defendant was confronted with the checks from Winn-Dixie and questioned about inconsistencies with the addresses, a different year of birth, and a different social security number, the defendant replied over and over again that the matter was "a big misunderstanding" and that he was "working it out with the bank." However, the defendant never sufficiently explained this "big misunderstanding" to Detective Harrelson.

ASSIGNMENT OF ERROR NO. ONE:
In this assignment of error, the defendant contends that the trial court erred in granting the State's Prieur motion and in allowing evidence of the defendant's previous scheme to defraud banks and/or merchants to be introduced at trial. This scheme involved checks used to purchase over $10,000.00 in computer equipment from New Orleans area Office Depot stores. These checks were written on a Hibernia Bank account in the name of Brian C. Holder, Jr. Specifically, the defendant argues that this other crimes evidence lacked similarity with the instant offense because a bank, Hibernia, was the victim of this scheme, while the victim of the instant offense was a store, Winn-Dixie. The defendant also argues that Mr. Holder was not a credible witness and, therefore, the State failed to establish the existence of the other crimes by clear and convincing evidence.
Generally, evidence of criminal offenses other than the offense being tried is inadmissible as substantive evidence because of the substantial risk of grave prejudice to the defendant. State v. McDermitt, 406 So.2d 195, 200 (La.1981). In order to avoid the unfair inference that a defendant committed a particular crime simply because he is a person of criminal character, other crimes evidence is inadmissible unless it has an independent relevancy besides simply showing a criminal disposition. State v. Lafleur, 398 So.2d 1074, 1080 (La.1981).
However, LSA-C. E. art. 404 B(1) provides:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as *1359 proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
The State's Prieur motion alleged that the defendant approached Mr. Holder and asked him to open a checking account at Hibernia Bank because the defendant was having trouble doing so. When Mr. Holder initially refused, the defendant threatened to harm or kill Mr. Holder and his family. Thereafter, Mr. Holder opened a checking account into which the defendant and Mr. Holder deposited "large amounts of checks." That same night, the defendant forced Mr. Holder to cash a $500.00 check at Harrah's Casino in New Orleans. The defendant kept the $500.00. The following day they went to Office Depot and purchased over $10,000.00 worth of computer equipment with Mr. Holder's Hibernia checking account. The defendant also kept this computer equipment. The State concluded that evidence of this scheme would be admissible at trial "to show the defendant's knowledge, intent, system and motive."
At the pretrial Prieur hearing, the State established the Hibernia Bank checking account scheme through the testimony of Mr. Holder. Mr. Holder and the defendant had been childhood friends. Although Mr. Holder apparently was a willing participant in the scheme at the beginning, the defendant threatened Mr. Holder and his family when Mr. Holder later expressed reservations and wanted to pull out. Mr. Holder testified that, when they purchased the computer equipment from Office Depot, he knew that the checking account did not contain sufficient funds to cover these purchases. This Hibernia Bank scheme took place in September of 1995. Although Mr. Holder admitted that he initially lied to the prosecutor about certain aspects of his story, he decided to tell the complete truth about the Hibernia Bank scheme on the morning of the Prieur hearing after listening to a tape recording of part of two conversations he had with the defendant. This tape was introduced into evidence as Defense Exhibit 1.
The defendant's girlfriend, Marcia Gibson, testified that the defendant told her his name was Alexander Jason Addington, and that she found out the defendant's real name was Paul Albert when he was arrested on October 12, 1995. At that time, Ms. Gibson and the defendant were living together in an apartment at 904 Dauphine Street. The rent was $2,600.00 per month. Ms. Gibson did not work or pay rent. She thought the defendant was employed. Initially, he told her that he was an attorney in the legal department at Bell South Mobility. He later told her that he was becoming a partner in the law firm of Addington, McCall, and Sinclair. She testified that none of these statements by the defendant were true. Ms. Gibson apparently had possession of the computer equipment purchased from Office Depot in the Hibernia Bank scheme.
At the conclusion of the Prieur hearing, the trial court granted the motion and ruled that evidence of the defendant's previous scheme to defraud Office Depot and/or Hibernia Bank was admissible at the trial.
We have reviewed the evidence introduced at the Prieur hearing and the trial, and we find no error in the trial court's ruling admitting this evidence of the defendant's previous scheme to defraud Office Depot and/or Hibernia Bank. The fact that the defendant engaged in this previous scheme with Mr. Holder was relevant and admissible to prove that his checks to Winn-Dixie were not accidental overdrafts but, instead, were part of a scheme by which he intended to defraud that store and/or the Bank of Louisiana of an amount in excess of $2,500.00. Contrary to the defendant's assertions herein, we find that there is a great deal of similarity between the instant offense and the previous scheme. The defendant obviously intended to defraud either a bank or a merchant by opening a checking account in Mr. Holder's name, depositing worthless checks in Mr. Holder's account to make it appear as if it contained a large balance, and then having *1360 Mr. Holder purchase expensive computer equipment for the defendant.
Finally, although the defendant argues that Mr. Holder was not a credible witness and claims that he was impeached, the evidence introduced at the Prieur hearing established the other crime by clear and convincing evidence. Any impeachment of Mr. Holder's credibility at trial went to the weight of his testimony rather than to its admissibility. See State v. Tolliver, 621 So.2d 17, 18-20 (La.App. 2nd Cir.1993).
This assignment of error is meritless.

ASSIGNMENT OF ERROR NO. TWO:
In this assignment of error, the defendant contends that the trial court erred in denying his motion for a continuance.
The defendant originally was charged with five counts of forgery. However, on April 1, 1996, the original bill of information was nolprossed and the instant bill of information, charging theft by fraud of over $500.00 from Winn-Dixie, was filed. The Prieur hearing was held on April 3, 1996. On the morning of trial, April 9, 1996, defense counsel filed a motion for a continuance alleging that he had not received an adequate time to prepare a defense to the charge in the new bill of information. At a hearing in chambers, the State objected to the continuance, explaining that defense counsel had been aware that the new bill of information was going to be filed approximately two weeks before its actual filing on April 1. In denying the motion for a continuance, the trial court found that, while a new bill of information had been filed, it was based upon the same facts and circumstances as the forgery charges in the previous bill and that there was no surprise to the defense given the fact that they had been aware for three to four weeks before trial of the State's intention to proceed under a theory of theft rather than forgery. Thereafter, jury selection was completed and the lunch recess was taken.
Prior to the reading of the bill of information and opening statements, a hearing was conducted out of the jury's presence on defense counsel's request to withdraw, based upon the fact that the defendant had retained another attorney, Byrne W. Dyer, III. Mr. Dyer had sent two pleadings by facsimile transmission, a motion to enroll as counsel and a request to stay the proceedings. The trial court denied all three motions and the trial resumed.
LSA-C.Cr.P. art. 707 provides:
A motion for a continuance shall be in writing and shall allege specifically the grounds upon which it is based and, when made by a defendant, must be verified by his affidavit or that of his counsel. It shall be filed at least seven days prior to the commencement of trial.
Upon written motion at any time and after contradictory hearing, the court may grant a continuance, but only upon a showing that such motion is in the interest of justice.
The granting or denial of a motion for continuance rests within the sound discretion of the trial court, and its ruling will not be disturbed on appeal absent a showing of a clear abuse of discretion. State v. Spencer, 444 So.2d 354, 356 (La.App. 1st Cir.1983), writ denied, 488 So.2d 694 (La.1986). For the reasons which follow, we conclude that the trial court did not abuse its discretion in denying the defendant's motion for a continuance.
In his brief to this Court, the defendant contends that, because the new bill of information was filed only eight days before trial, and the Prieur hearing was held only six days before trial, he did not have a sufficient opportunity to prepare a defense. We disagree.
Although the instant bill of information charging the defendant with theft over $500.00 from Winn-Dixie was filed only eight days before the trial, the essential facts of the offense were the same. Furthermore, defense counsel did not deny that he had been informed by the prosecutor at least three weeks before trial that the former bill charging five counts of forgery was going to be nol-prossed and replaced by the new bill charging theft. Moreover, the State filed the Prieur motion on March 25, 1996. Therefore, the defendant had ample time to prepare a defense. Contrary to the defendant's assertions in brief, we fail to see how *1361 he was prejudiced in this situation. Accordingly, we find no abuse of discretion by the trial court in denying the defendant's motion for a continuance.
The defendant also contends that the trial court erred in denying trial counsel's motion to withdraw, which was filed when the defendant requested a stay of the proceedings so that retained counsel could enroll. For the following reasons, we find no error by the trial court in denying trial counsel's motion to withdraw.
The right to counsel cannot be manipulated to obstruct the orderly procedure of the courts and cannot be used to interfere with the fair administration of justice. State v. Seiss, 428 So.2d 444, 447 (La.1983). While the right to counsel of choice in a criminal trial is guaranteed by the United States and Louisiana Constitutions, there is no constitutional right to make a new choice on the date a trial is scheduled to begin, with the attendant necessity of a continuance and its disrupting implications to the orderly trial of cases. State v. Leggett, 363 So.2d 434, 436 (La.1978). The right to counsel of choice must be exercised at a reasonable time, in a reasonable manner, and at an appropriate stage within the procedural framework of the criminal justice system of which it is a part. State v. Lee, 364 So.2d 1024, 1028 (La.1978). Once the day of trial has arrived, the question of withdrawal of counsel rests largely within the discretion of the trial court. The Louisiana Supreme Court has frequently upheld the trial court's denial of motions for continuances or withdrawal of counsel made on the day of trial when the defendant is dissatisfied with his present attorney but had ample opportunity to retain private counsel. State v. Leggett, 363 So.2d at 436.
In denying the motion for a stay of the proceedings and the motion to enroll retained counsel, the trial court stated:
BY THE COURT:
The record will reflect that the Indigent Defender Board was appointed to represent the defendant sometime during the first week of December 1995. Since that date the defendant has had court appointed counsel. The pretrial in this matter was held on February 8, 1996. At that pretrial the defendant was represented by Mr. LeBlanc. A status conference was held on March 12, 1996. At that status conference Mr. LeBlanc again represented the defendant.
The basis of the request for the continuance is that the State amended the bill of information changing the charge from forgery
BY MR. LEBLANC:
Your Honor, I don't think it was an amendment.
BY THE COURT:
I'm sorry. Filed a new bill of information charging the defendant with theft of a value of $500 or more. The original bill of information charged the defendant with forgery. As noted in my reasons in denying the Motion for Continuance, the charge that the defendant is presently before the Court is based upon the same factual situations of the original bill of information. I do not believe that there is any surprise to the defendant or his counsel as stated during the argument of the Motion for Continuance. The State made the defense aware of its intent to file the current bill of information approximately two weeks before the actual filing.
In addition, Mr. Byrne Dyer is not present in the courtroom to enroll or to file his motion. I am unaware of any provision in the law that allows a facsimile transmission in [sic] be filed in lieu of an original in a criminal proceeding. The only statute that I'm aware of that provides for facsimile transmission filings is Title 13, section 850 which is limited to civil actions.
In addition, the Court will also take notice that Mr. Byrne Dyer has not contacted this Court directly to request by telephone transmission either a continuance, a stay order or a Motion to Enroll as Appellant Counsel. For those reasons the Court will deny the Motion for the Stay Order and the Motion for Mr. Dyer to enroll as counsel of record.
The trial had begun, the jury was selected, and it was time to read the bill, the plea, and begin opening arguments. Retained counsel *1362 was not in court. As noted by the trial court, retained counsel had not telephoned. Accordingly, we conclude that the trial court did not abuse its discretion in refusing to stay or recess the trial or in denying the defendant's motion to enroll retained counsel. Under these circumstances, we likewise find no error in denying trial counsel's motion to withdraw.
For the above reasons, this assignment of error is meritless.

ASSIGNMENT OF ERROR NO. THREE:
In this assignment of error, the defendant contends that the evidence was insufficient to support the instant conviction and, therefore, the trial court erred in denying his motion for post-verdict judgment of acquittal.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. See LSA-C.Cr.P. art. 821; State v. King, 563 So.2d 449, 456 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990). The Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard of review incorporated in Article 821 is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides, the fact finder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. McLean, 525 So.2d 1251, 1255 (La.App. 1st Cir.), writ denied, 532 So.2d 130 (La.1988).
LSA-R.S. 14:67 provides, in pertinent part:
Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
An essential element of the crime of theft is a specific intent to permanently deprive the victim of his property. State v. Banta, 589 So.2d 1088, 1090 (La.App. 1st Cir.1991). Although intent is a question of fact, it need not be proven as a fact; it may be inferred from the circumstances of the transaction and the actions of the defendant. See LSA-R.S. 14:10(1); State v. Crosby, 515 So.2d 570, 572 (La.App. 1st Cir.1987).
The testimony of the victim is sufficient to establish the elements of the offense. State v. Creel, 540 So.2d 511, 514 (La.App. 1st Cir.), writ denied, 546 So.2d 169 (La. 1989). In this case, the victim was a Winn-Dixie grocery store in Thibodaux. At the trial, Corinthia Reulet, a bookkeeper at Winn-Dixie, identified six checks totaling $2,588.68. These checks were introduced into evidence as State Exhibit 1-A1-F. These checks were written on the account of Addington, McCall, and Sinclair.
The first check was payable to Christain Jenkins. Mr. Jenkins testified that the defendant asked him to cash the check because the defendant had been in trouble with the law and had changed his name but was having trouble "over having two I.D.'s." Mr. Jenkins cashed the first check on November 17, 1995. He obviously used Mr. Jenkins as a guinea pig to determine whether or not Winn-Dixie would cash a check from this fictitious law firm account. The remaining five checks were payable to, and cashed by, the defendant during the following week. All six of these checks were returned to Winn-Dixie unpaid.
The testimony of two Bank of Louisiana employees, Shirley Blunt and Roberta Swanson, established that the defendant opened two checking accounts, one personal account in the name of Alexander Addington, and one business account in the name of a fictitious law firm, Addington, McCall, and Sinclair. The defendant identified himself as an attorney in the firm, and Mr. Holder, who also was present, indicated that he was the accounting director. These accounts were opened on October 5, 1995. For identification, the defendant used an international driving permit in the name "Alexander J. Addington." The law firm account never contained more than $800.00; this account was "frozen" on October 12, 1995, meaning *1363 that no further activity, including deposits, could take place on the account. The personal account also was "frozen" on October 12, 1995. Although this account contained over $3,500.00 on October 12, and still contained over $3,400.00 as late as February 23, 1996, the defendant did not request overdraft protection when the accounts were opened and apparently no attempt was made to transfer money from the personal account into the law firm account. Ms. Blunt testified that, while the Bank of Louisiana might transfer funds between established accounts if an overdraft protection form had been signed or if the customer called and requested such a transfer, no such balance transfers would be done on new accounts.
As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31, 38 (La.App. 1st Cir. 1984). Furthermore, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Richardson, 459 So.2d at 38. On appeal, this Court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. State v. Creel, 540 So.2d at 514.
No defense witnesses testified at the trial. The guilty verdict returned in this case indicates that the jury accepted the testimony and documentary evidence introduced by the State. The jury clearly rejected the suggestions by the defense that Mr. Holder was only trying to implicate the defendant and exonerate himself and/or that the defendant did not intend to defraud Winn-Dixie when cashing these checks and believed that sufficient funds to cover the checks would simply be transferred by the Bank of Louisiana into the law firm account from his personal account. The evidence that the defendant and Mr. Holder participated in the previous scheme to defraud Office Depot and/or Hibernia Bank proved that the defendant's checks which were cashed at Winn-Dixie were not mere overdrafts, but were part of a deliberate plan to defraud banks and/or merchants through the checking account of a fictitious law firm. Considering the above, we are convinced that a rational trier of fact, viewing all of the evidence as favorable to the prosecution as any rational fact finder can, could have concluded that the State proved beyond a reasonable doubt, and to the exclusion of any reasonable hypothesis of innocence, that the defendant committed the offense of theft of a value in excess of $500.00. Accordingly, the trial court correctly denied the defendant's motion for post-verdict judgment of acquittal.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NO. FOUR:
In this assignment of error, the defendant contends that he received ineffective assistance of counsel at the trial. Specifically, the defendant contends that trial counsel was ineffective because: (1) he failed to request a continuance until the day of trial, despite the filing of the new bill of information and the adverse ruling on the Prieur motion; (2) he failed to properly cross-examine State witnesses and especially failed to ask who requested that the bank accounts be frozen; and (3) he failed to request a jury instruction on the use of an alias. Essentially, the defendant suggests that trial counsel was generally not prepared to go to trial.
A claim of ineffective assistance of counsel is more properly raised by an application for post-conviction relief in the district court where a full evidentiary hearing may be conducted. However, where the record discloses sufficient evidence to decide the issue of ineffective assistance of counsel when raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Teeter, 504 So.2d 1036, 1039-1040 (La.App. 1st Cir.1987).
The allegations of ineffective assistance of counsel raised in the defendant's brief cannot be sufficiently investigated from an inspection of the record alone. Whether or not to ask certain questions of State witnesses, or to request a particular jury instruction on the use of an alias, could have involved matters of trial preparation and/or strategy. However, we note that decisions relating to investigation, preparation, and *1364 strategy cannot possibly be reviewed on appeal. See State v. Martin, 607 So.2d 775, 788 (La.App. 1st Cir.1992). Only in an evidentiary hearing in the district court, where the defendant could present evidence beyond that contained in the instant record, could these allegations be sufficiently investigated. Accordingly, these allegations are not subject to appellate review.

ASSIGNMENT OF ERROR NO. FIVE:
In this assignment of error, the defendant contends that the trial court erred in imposing an excessive sentence.
The defendant was sentenced on June 7, 1996. After sentencing, the defendant filed a motion to reconsider sentence, alleging that the sentence was excessive. The trial court denied the motion to reconsider sentence.
The Code of Criminal Procedure sets forth items which must be considered by the trial court before imposing sentence. LSA-C.Cr.P. art. 894.1. The trial court need not recite the entire checklist of Article 894.1, but the record must reflect that it adequately considered the criteria. State v. Herrin, 562 So.2d 1, 11 (La.App. 1st Cir.), writ denied, 565 So.2d 942 (La.1990). In light of the criteria expressed by Article 894.1, a review for individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. State v. Watkins, 532 So.2d 1182, 1186 (La. App. 1st Cir.1988).
Although a sentence falls within statutory limits, it may be excessive. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). However, the trial court has great discretion in imposing a sentence within the statutory limits; and such a sentence will not be set aside as excessive in the absence of manifest abuse of discretion. State v. Latiolais, 563 So.2d 469, 473 (La.App. 1st Cir.1990).
Before imposing sentence, the trial court stated that it had considered the presentence investigation report and defense counsel's presentence memorandum. The trial court noted the defendant's recent conviction in federal court for two counts of unauthorized use of an access device. After reviewing the facts of the instant offense, the court found an undue risk that the defendant would commit another crime during a period of probation. Finally, the trial court concluded that the defendant was in need of correctional treatment and stated that any lesser sentence would deprecate the seriousness of the offense. Our review of the sentencing transcript indicates that the trial court complied with the Article 894.1 criteria.
For his conviction of theft over $500.00, the defendant was exposed to a maximum fine of $3,000.00 and a maximum sentence of ten years at hard labor. See LSA-R.S. 14:67 B(1). The defendant received a sentence of four years at hard labor, which was clearly within the lower half of the sentencing scale. Considering the circumstances of the instant offense, the defendant's recent felony conviction in federal court for similar criminal activity, and the reasons for sentencing given by the trial court, we conclude that the instant sentence is not excessive.
This assignment of error is meritless.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Judge Remy Chiasson, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] On the second and final day of trial, April 10, 1996, at 2:40 p.m., the trial court declared a recess when the jury was retired to deliberate. We note that the court minutes do not indicate that the defendant and his attorney were present when the trial resumed at 3:05 p.m. However, The transcript indicates that the defendant and his attorney were present in court at this time.
[3] The record does not contain any assignments of error. The assignments of error are taken from the defendant's brief. Although the defendant did not properly designate these assignments of error as required by LSA-C.Cr.P. arts. 844, 916(1) and (5), and 920, this Court is bound to review the errors assigned and argued in his brief in accordance with the Supreme Court's ruling in State v. Galliano, 94-2030, 94-2280 (La.1/6/95); 648 So.2d 911. See State v. Galliano, 93-1101, p. 2 n. 1 (La.App. 1st Cir. 5/5/95); 655 So.2d 538, 540 n. 1.
[4] The spelling "Adington" also appears in the record.
[5] The spelling "Christan" also appears in the record.