714 So.2d 210 (1998)
STATE of Louisiana
v.
Dewitt EAMES.
No. 97 KA 0767.
Court of Appeal of Louisiana, First Circuit.
May 15, 1998.
*212 Tracey Ewing, Asst. Dist. Atty., Baton Rouge, for State.
Robert J. Hildum, Baton Rouge, for Defendant-Appellant.
Before LOTTINGER, C.J., and SHORTESS and FOGG, JJ.
SHORTESS, Judge.
Dewitt Eames (defendant) was charged by grand jury indictment with second degree murder, La. R.S. 14:30.1. He pled not guilty and, after a jury trial, was found guilty as charged. On the day of sentencing, the trial court denied defendant's motion for new trial. Defendant waived the legal delays, and the trial court sentenced him to life imprisonment at hard labor, without benefit of parole, probation or suspension of sentence.[1] He now appeals, arguing four assignments of error.

FACTS
On September 14, 1994, Kevin Evans, his wife, and two young children were at their Baton Rouge home. Shortly after midnight, Mrs. Evans and her ten-year-old son, Kevin Evans, Jr. (Kevin Jr.), were watching a movie in her bedroom; her six-year-old daughter was asleep on the bed. Mr. Evans was in the dining room listening to music. Mrs. Evans heard an automobile horn blow outside, and then Mr. Evans went outside. A short time later, Mr. Evans reentered the *213 home with three other men. From where he was lying on the bed, Kevin Jr. could see that each man held a gun pointed toward his father. Each man also wore latex gloves and a baseball cap. One man came into the bedroom and cursed at Mrs. Evans. Her daughter awoke, and the man threatened to shoot the child if she moved. This man then forced them into Kevin Jr.'s bedroom. A short while later, he forced Mrs. Evans and her children into the bathroom. While they were there, they heard fighting, gunshots, something fall on the floor, and the sound of the men running out of the home. Mrs. Evans ran out of the bathroom and saw her husband laying on the floor of her bedroom. She told her son to go to a neighbor's house for help. Mr. Evans (the victim) received three gunshot wounds and died as a result of a gunshot wound to his head.
Kevin Jr. (age 12 at the time of trial) testified he could see the faces of the men who entered the home from where he was sitting on his mother's bed. Although he could not remember details about the men's clothing, he positively identified defendant as one of the perpetrators. On cross-examination, he admitted he had seen defendant once before with his father, but denied that was the reason for his identification. Kevin Jr. further testified that during the police investigation he positively identified two of the perpetrators, defendant and another man, Brian Berry,[2] from photographic lineups.
Baton Rouge City Police officer Devin Washington testified he was dispatched to the home after the shooting. Upon arrival, he found the victim's body in a ransacked bedroom. The officer secured the scene and talked with a neighbor, who stated she saw a Jeep parked at a nearby stop sign shortly before she heard gunshots and Mrs. Evans screaming. Later, while on patrol, Washington discovered a stolen Jeep that fit the description of the Jeep seen leaving the area of the Evans home.
Detective Michael Verrett testified that at the murder scene he found a pager belonging to the victim. It was still active, and the last entry was at 11:34 p.m. Verrett discovered that the number of the last entry was to a pay phone located at the corner of North and Fourth Streets, near the location from which the Jeep was stolen. When the recovered Jeep was dusted for fingerprints, it appeared the vehicle had been wiped down, and a towel was found inside the vehicle. Verrett also testified that latex gloves were found a half block away from where the Jeep was recovered.
Subsequently, during their investigation, the police received a tip that a "Dee Witt" was involved with the murder. While discussing this tip with other officers, Verrett was given the name of Dewitt Eames. The detective discovered that defendant's residence was in an apartment complex at 439 North Fifth Street, the same apartment complex of the Jeep's owner and the area from which the Jeep was stolen. Verrett also noted the Jeep had been recovered only a few blocks away from this complex.
Verrett testified he went to defendant's apartment and located Burnell Richardson, defendant's roommate. Defendant was not there, but Richardson subsequently gave the police a statement that defendant had admitted to being involved in the homicide. Richardson also identified Berry in a photographic lineup as another man he heard talking about the crime. Acting on this information, the police created a photographic lineup containing defendant's picture. The victim's son identified defendant as one of the perpetrators. Mrs. Evans could not positively identify defendant as one of the men.
During a search of defendant's apartment, officers retrieved a portable cellular telephone with a power pack belonging to the victim. Family members told Verrett the telephone was missing after the shooting. Officers also seized a nine-millimeter handgun, baseball caps, and a note containing the victim's pager and home numbers.
Richardson testified that defendant had driven him down to his grandmother's house *214 in New Orleans on September 13. Defendant was supposed to pick him up that night for the trip home to Baton Rouge, but did not come until 4:00 a.m. on September 14. There were two other men[3] in the vehicle. When the men arrived at the apartment in Baton Rouge, defendant and another man talked about whether the television news would include a report of a Baton Rouge man murdered in his home. While they watched a local news broadcast, they heard a report of a murder in which the perpetrators escaped in a Jeep. Berry noted the color of the Jeep was wrong. Defendant stated that they had stolen the Jeep and that he had "bucked the n_____," a term meaning he had killed a black man. During this conversation, Richardson realized the men had committed the murder.
Richardson further testified that when he returned home from work on September 14, he was contacted by Detectives Verrett and Keith Bates. Defendant gave the detectives a statement regarding the conversation about the murder. On cross-examination, Richardson admitted he had testified for the State at Berry's trial, but after the trial, recanted his testimony. However, Richardson explained that he recanted because he feared for his physical safety. He stated his probation on unrelated charges had been revoked and he was incarcerated in the East Baton Rouge Parish Prison with defendant and Berry. Fearing he would be labeled a "rat" and killed by other inmates, Richardson told Berry's attorneys that he had lied during Berry's trial. To support this explanation, Richardson acknowledged that in prison he received two notes from Berry. Richardson denied he was lying or had been promised anything for his testimony against defendant.
Bates testified he was present when Richardson made the statement about his knowledge of the murder. Concerned about whether Richardson was actually involved in the crime, he included Richardson's photo in a lineup shown to Mrs. Evans. She did not identify Richardson as one of the suspects. Bates corroborated Verrett's testimony about the physical evidence seized from defendant's apartment and the tip about the name "Dee Witt." He also stated that in an interview with defendant after his arrest, defendant named Berry and another man, Eric Hudson, as being involved in the crime.
Defendant's case-in-chief included two witnesses. Elizabeth Lee, defendant's great aunt, testified the victim had worked at a St. Francisville lounge she owned. There, she observed that the victim was selling illegal drugs and talked with him about this activity. She stated that defendant had come with Evans to the bar several times and that after their conversation the victim "was looking for Dewitt." The only other defense witness was East Baton Rouge Parish Sheriff's Deputy Kaillum Alexander, who had experience working at the Parish Prison. He stated that the wing in which Richardson said he was housed was a lockdown unit and that prison procedures did not allow inmates to roam freely on that wing. On cross-examination, the deputy admitted that he did not know where defendant and Richardson were housed and that inmates would physically attack other prisoners who "ratted."

SUFFICIENCY OF THE EVIDENCE

(Assignment of error number one)
Defendant contends the evidence presented, particularly the testimony of the State's witnesses, Kevin Jr. and Richardson, was insufficient to support the verdict. Specifically, he contends Kevin Jr.'s identification of defendant as one of the perpetrators "is impossible." He argues that the boy's opportunity to see the killers was limited, that there was no trial testimony regarding his initial description of the killers, that he took ninety-nine seconds to identify defendant in the photo lineup, and that Mrs. Evans could not identify defendant as being present the night of the murder. Defendant further contends that Richardson's testimony is suspect because he was a convicted felon, he testified that he feared he would be charged in the murder, and trial testimony established Richardson *215 was lying about the prison layout and defendant's ability to contact him in the prison.
The State contends that the testimony of one eyewitness, Kevin Jr., was sufficient to support the verdict, that the jury made a credibility determination, and that this court cannot reassess the credibility of the witnesses. We agree.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether, when viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude the State proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. See La.C.Cr.P. art. 821; State v. Johnson, 461 So.2d 673, 674 (La.App. 1st Cir.1984). The Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard of review incorporated in Louisiana Code of Criminal Procedure article 821 is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, Louisiana Revised Statute 15:438 provides the fact-finder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. Nevers, 621 So.2d 1108, 1116 (La.App. 1st Cir.), writ denied, 617 So.2d 906 (La.1993); State v. McLean, 525 So.2d 1251, 1255 (La.App. 1st Cir.), writ denied, 532 So.2d 130 (La.1988).
Where the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification. State v. Richardson, 459 So.2d 31, 38 (La.App. 1st Cir.1984). Positive identification by only one witness may be sufficient to support the defendant's conviction. State v. Nevers, 621 So.2d at 1116; State v. Royal, 527 So.2d 1083, 1086 (La.App. 1st Cir.), writ denied, 533 So.2d 15 (La.1988).
In this case, Kevin Jr. positively identified defendant in court and during an out-of-court photographic lineup as one of the three armed men in his home when his father was shot and killed. Richardson testified that defendant admitted to him that he shot the victim. Police investigation revealed that the victim's cellular telephone, a nine-millimeter handgun, baseball caps, and a piece of paper with the victim's pager and home numbers were found in defendant's apartment. Additionally, a vehicle generally fitting the description of a vehicle used by the perpetrators was stolen from the parking lot of defendant's apartment complex and recovered not far away from this same apartment building. The testimony further showed that a call to the victim's pager shortly before his murder was placed from a pay telephone near defendant's apartment complex.
The direct and circumstantial evidence identifying defendant as one of the perpetrators of this offense was sufficient to negate any reasonable probability of misidentification. To the extent that conflicting testimony was presented herein, the guilty verdict indicates the jury accepted the testimony of the State's witnesses. As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. Furthermore, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Nevers, 621 So.2d at 1116; State v. Richardson, 459 So.2d at 38.
After a careful review of the record, we believe that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have concluded that the State proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that defendant committed the offense of second degree murder.
Therefore, this assignment of error is meritless.

INEFFECTIVE ASSISTANCE OF COUNSEL

(Assignment of error number two)
Defendant contends he did not receive effective assistance of counsel. Specifically, he argues defense counsel failed to *216 present evidence to substantiate his opening statement and erroneously admitted in the opening that defendant was present at the scene of the crime and was a drug dealer. Defendant also contends that during the cross-examination of Bates, a State witness, defense counsel erroneously elicited testimony about co-defendant Berry's statement that implicated defendant in the murder.
The State contends the ineffective-assistance-of-counsel claims are not properly before this court and alternatively, the claims lack merit. Specifically, the State argues that the decisions regarding opening statements and cross-examination involve strategy. The State also contends defendant failed to demonstrate that the opening statement or the co-defendant's statement was prejudicial.
A claim of ineffective assistance of counsel is more properly raised by an application for post-conviction relief in the district court where a full evidentiary hearing may be conducted. However, where the record discloses sufficient evidence to decide the issue of ineffective assistance of counsel when raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Albert, 96-1991, p. 11 (La.App. 1st Cir. 6/20/97), 697 So.2d 1355, 1363; State v. Teeter, 504 So.2d 1036, 1039-1040 (La.App. 1st Cir.1987).
The allegations of ineffective assistance of counsel raised in defendant's brief cannot be sufficiently considered from an inspection of the record alone. Whether to ask certain questions of State witnesses on cross-examination, the decision of what is presented in an opening statement, or whether to make an opening statement at all could have involved matters of trial preparation and/or strategy. Decisions relating to investigation, preparation, and strategy cannot possibly be reviewed on appeal. Only in an evidentiary hearing in the district court, where defendant could present evidence beyond that contained in this record, could these allegations be sufficiently considered. Accordingly, these allegations are not subject to appellate review. See State v. Albert, 697 So.2d at 1363-1364.
This assignment of error lacks merit.

REFERENCE TO DEFENDANT'S FAILURE TO TESTIFY

(Assignment of error number three)
Defendant contends that during defendant's closing argument, the prosecutor's objection contained an improper reference to defendant's failure to testify. Defendant further appears to argue that a mistrial should have been granted. The State argues that there was no objection to the prosecutor's statement, that the statement was not a reference to defendant's failure to testify, and that no motion for mistrial was made to the trial court.
The improper reference was allegedly made in the prosecutor's objection during defendant's closing arguments as follows:
Judge, I am going to object to this. What testimony is he talking about? Now, Your Honor, this is grossly improper. [Defense counsel] knows how to get that evidence in. There's one way to get it in, he chose not to do it, and he has to live with it. All right. I'm going to ask the court to admonish him, Judge. This is improper. He knows how to get that testimony in.
Initially, we note that an irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence and the grounds therefor specified. La.C.Cr.P. art. 841; State v. Stewart, 486 So.2d 906 (La.App. 1st Cir.1986). The reason for this rule is that any such objection should first be made in the trial court in order so the trial judge is presented with the opportunity to correct any such error. State v. Skipper, 387 So.2d 592, 594 (La.1980); State v. Freeman, 500 So.2d 807, 809-810 (La.App. 1st Cir.1986). Furthermore, Code of Criminal Procedure article 770 mandates that a mistrial shall be granted, or an admonition given, upon "motion of a defendant." Defense counsel did not technically make an objection or motion for mistrial regarding the prosecutor's comment.
Nevertheless, we will review this alleged error. In order to mandate a mistrial under Code of Criminal Procedure article 770, the alleged indirect reference must be *217 intended to draw the attention of the jury to the defendant's failure to testify or present evidence in his behalf. State v. Smith, 433 So.2d 688, 697 (La.1983). In our opinion, the prosecutor's comment was directed to defense counsel's closing remarks and was merely an explanation of the reason for his objection. The record does not reflect that the reference, if any, was intended to focus the jury's attention on defendant's failure to testify or present evidence in his behalf. State v. Freeman, 500 So.2d at 809-810. Moreover, the record reflects that defense counsel, not the prosecutor, referred to defendant's failure to testify. In statements just prior to the prosecutor's objection, defense counsel stated, "And truthfully, I didn't put any witnesses on. That would require... me to put my defendant on, and I didn't think it was necessary, because I didn't think they proved their case beyond a reasonable doubt."
Therefore, for the above reasons, this assignment of error lacks merit.

EVIDENCE OF CO-DEFENDANT'S CONVICTION

(Assignment of error number four)
Defendant contends the prosecutor made two obvious and erroneous references to co-defendant Berry's conviction for the victim's murder. He argues these references denied him his constitutional right to a fair trial. The State contends defendant is barred from raising this alleged error because he fails to comply with the Uniform Rules of Louisiana Courts of Appeal, Rule 2-12.4, requiring that he specifically refer to the place in the record containing the alleged errors. The State also argues that at the first alleged reference defendant failed to make a contemporaneous objection to the prosecutor's questions, and during the second alleged reference he failed to present this ground as a basis for the objection at trial.
Initially, we note the State's argument that defendant has failed to specify the place in the record where the alleged errors occurred. However, in his brief, defendant quoted parts of Richardson's testimony, and we have reviewed the entire record, including those portions. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence and the grounds therefor specified, nor may a new ground for an objection be raised for the first time on appeal. See La.C.Cr.P. art. 841. The reasons for the objection must be sufficiently brought to the attention of the trial court to allow it the opportunity to make the proper ruling and prevent or cure any error. A defendant is limited on appeal to the grounds for the objection articulated at trial. State v. Harris, 95-1843, p. 3 (La. App. 1st Cir. 11/8/96), 684 So.2d 976, 978, aff'd., 97-0300 (La.4/14/98), 711 So.2d 266. In this matter, defense counsel either failed to make an objection or to state the specific grounds for the objections now raised in this appeal. He may not now complain of such error.
Nevertheless, we will review the alleged errors. We do not believe the testimony indicated Berry was convicted of the murder of Mr. Evans; the questions and answers during Richardson's testimony refer only to his testimony at Berry's trial. Moreover, there is no testimony that Berry's incarceration was a result of a conviction in the trial for the murder of Mr. Evans. Nowhere is the outcome or verdict in that trial revealed. The testimony simply relates to Richardson's recanting of his statement to police and his testimony at Berry's trial.
Thus, this assignment of error lacks merit.

PATENT ERROR
We note the minutes do not reflect that the court ordered the sentence to be served without benefit of "probation, parole, or suspension." However, the transcript indicates the court properly ordered the sentence to be served in this manner. The transcript prevails in the event of such a discrepancy, and we order this matter be remanded to the district court for correction of the minute entry. See State v. Huls, 95-0541, p. 30 (La.App. 1st Cir. 5/29/96), 676 So.2d 160, 179, writ denied, 96-1734 (La.1/6/97), 685 So.2d 126.
*218 CONVICTION AND SENTENCE AFFIRMED; REMANDED TO CORRECT MINUTE ENTRY.
NOTES
[1] See patent error discussion.
[2] Originally defendant and Brian Berry were charged in the same grand jury indictment. Subsequently the charge against Berry was dismissed, and he was charged in a new and separate indictment.
[3] Richardson at first testified the vehicle contained three men in addition to defendant; later he said the three men included himself.