684 So.2d 976 (1996)
STATE of Louisiana
v.
Adrienne HARRIS.
No. 95 KA 1843.
Court of Appeal of Louisiana, First Circuit.
November 8, 1996.
Rehearing Denied December 30, 1996.
*977 Walter P. Reed, District Attorney, Covington, for Plaintiff/Appellee State of Louisiana.
William R. Campbell, Jr., New Orleans, for Plaintiff/Appellee State of Louisiana.
John Wilson Reed, New Orleans, for Defendant/Appellant Adrienne Harris.
Before WATKINS, KUHN and GUIDRY[1], JJ.
KUHN, Judge.
Adrienne Harris was charged by grand jury indictment with one count of second degree murder, a violation of La. R.S. 14:30.1. Defendant pled not guilty and, after trial by jury, was convicted of manslaughter, a violation of La. R.S. 14:31. The trial court sentenced her to serve a term of seventeen years at hard labor with credit for time *978 served. Defendant has appealed, urging two assignments of error.

Facts
The record reveals that defendant had been living with the victim, Richard Casnave, for many years prior to the incident which resulted in Casnave's death. The victim and defendant had spent the evening with the victim's family, an aunt, uncle, and cousin. Defendant left with the aunt and uncle to retrieve her car from their house; the cousin also left at this time. Upon her return shortly after midnight on May 15, 1994, defendant claims that she and the victim got into an argument about her daughter, resulting in the victim hitting defendant.
At some point, defendant retrieved a gun from a closet. She alleged that the gun went off accidentally. Dr. MacKenzie, who performed the autopsy on the victim, stated that the victim died as a result of a gunshot wound to the eye which also penetrated the brain.

Assignment of Error Number 1
In this assignment of error, defendant argues the trial court improperly allowed irrelevant testimony attempting to establish that the victim did not beat defendant in public and that the victim had not beaten other women with whom he was romantically involved. Defendant urges this evidence also constituted improper character evidence.
During direct examination, defendant objected to a question the State asked Wanda Casnave, the victim's sister-in-law. The prosecutor asked whether the witness had ever seen the defendant "acting in such a way with your brother-in-law that you think that your brother-in-law might be justified to hit her?" In response, the witness related an incident that occurred on a trip to the Bahamas. The incident arose when an argument ensued between defendant and the victim over what they would have to eat that night; although the incident was embarrassing, Casnave testified she did not see the victim strike or beat defendant on this occasion. Defendant also objected to testimony from the victim's father wherein he described defendant as "aggravating" and related an argument which occurred on a trip to Houston. This witness's testimony was that the incident did not result in a beating. On rebuttal the state sought to elicit testimony from three persons with whom the victim had previously been romantically involved, concerning whether they had been struck or beaten by the victim. Defense counsel objected to the testimony of the first such witness, arguing that the testimony was irrelevant and prejudicial.
Initially, we note the defendant objected only on the grounds of relevance, and the trial court overruled these objections. Defendant did not object on the specific grounds of improper character evidence. Thus, this argument constitutes a new ground for objection and cannot be raised for the first time on appeal. See La.Code Crim. P. art. 841; La.Code Evid. Art. 103(A)(1); State v. Lockhart, 629 So.2d 1195, 1205 (La. App. 1st Cir.1993), writ denied, 94-0050 (La.4/7/94), 635 So.2d 1132. The reasons for the objection must be sufficiently brought to the attention of the trial court to allow it the opportunity to make the proper ruling and prevent or cure any error. A defendant is limited on appeal to the grounds for the objection articulated at trial. State v. McCutcheon, 93-0488, p. 10 (La.App. 1st Cir. 3/11/94), 633 So.2d 1338, 1343-1344, writ denied, 94-0834 (La.6/17/94), 638 So.2d 1093.
La.Code Evid. art. 401 provides:
"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
La.Code Evid. art. 403 provides:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.
In questions of relevancy, much discretion is vested in the trial court. Such rulings will not be disturbed on appeal in the absence of a showing of manifest abuse of discretion. State v. Dixon, 620 So.2d 904, 908 (La.App. 1st Cir.1993). We find there is *979 no danger of unfair prejudice, confusion, or misleading of the jury by the admission of this evidence. Thus, the admission of the evidence was not an abuse of the trial court's discretion, and the jury could decide the weight the evidence should be given.
Moreover, we find the testimony to which defendant objected was properly admitted. The testimony introduced by the State sought to rebut the claims made by defendant that the victim had abused her on a number of occasions, that the victim was the aggressor on the night in question and that defendant killed the victim in self-defense. Both the State and the defense agree that the only issue in this case was whether the homicide was justifiable.
Defendant argues the State could not introduce specific instances of conduct of the victim, which tended to prove he was a peaceable person. The State maintains defendant "opened the door" for testimony regarding prior physical abuse, when testimony was elicited during cross-examination of a police officer regarding defendant's claim of being beaten on the night in question.
La.Code Evid. art. 404(A)(2) and (B)(2) creates a familial exception to allow a defendant to introduce "specific instances of conduct and domestic violence" without first having to prove a hostile demonstration or overt act on the part of the victim. In State v. Terry, 94-0622 (La.App. 1st Cir. 4/7/95), 654 So.2d 455, writ denied, 95-1180 (La.10/13/95), 661 So.2d 494, this court examined when evidence of the victim's dangerous character can be admitted in a familial case. We ruled that once the proper foundation was established to show a familial situation and history of assaultive behavior, then evidence of the victim's dangerous character would be admissible by a defendant for two purposes: (1) to show defendant's reasonable apprehension of danger which would justify his conduct; and (2) to help determine whether the victim was the aggressor in the instant case. This court found that La.Code Evid. art. 404 would authorize the admission of evidence of the victim's dangerous character which would include specific instances of conduct and domestic violence by the victim whether against the accused or others. State v. Terry, 94-0622, at pp. 12-13, 654 So.2d at 462 (and cases cited therein).
Terry leaves open the question of whether the State may use specific instances of conduct to rebut the defense evidence. The Code of Evidence does not specifically address this question, or possibly even contemplate it. Comment (i) to La.Code Evid. art. 404 states that, if character evidence is admissible under this article, the methods by which it is to be proved are set forth in article 405.[2] However, article 405, which seems to deal with general character evidence, does not appear to address the familial exception of article 404.
Pursuant to article 405, a character witness can testify only as to the general reputation of a person. Then, on cross-examination, inquiry is allowable into relevant specific instances of conduct. In the familial exception context, however, a defendant is allowed to proceed directly with specific instances of conduct. In such a context, we are convinced that the State should be allowed to rebut with the same type of evidence.
In the instant case, the testimony elicited by the State falls into two categories. In the first category are the specific instances of non-violence on the part of the defendant. This evidence was intended to rebut statements brought out on cross-examination by defense counsel where defendant told police officers she had been beaten by the victim on the night of the killing. Further, the defense presented several witnesses who testified that they had seen the victim strike defendant. The State should be allowed to rebut these witnesses with similar testimony. Thus, the testimony regarding prior acts of non-violence on the part of the victim toward defendant were properly admitted under the familial exception as specific instances of conduct tending to rebut defendant's reasonable *980 apprehension of danger which would justify her conduct in killing the victim. The second category of evidence was general character evidence by the victim's ex-wife and two former girlfriends. This evidence is clearly admissible to rebut defense allegations as to the dangerous nature of the victim. Thus, this assignment lacks merit.

Assignment of Error Number 2
In defendant's final assignment of error, she argues the sentence imposed by the trial court was excessive. Defendant filed a timely motion to reconsider sentence, which was denied by the trial court. Defendant was convicted of manslaughter, and the trial court sentenced her to seventeen years at hard labor. Defendant's exposure was up to forty years. See La. R.S. 14:31(B).
In this case, the trial court ordered and received a presentence investigation report (PSI). The PSI included a sentencing guidelines report reflecting that, under the advisory sentencing guidelines promulgated by the Louisiana Sentencing Commission, the applicable sentencing range of incarceration for a first felony offender who falls into grid cell 1-G and who commits the instant offense is 60-90 months. The agent who prepared the PSI recommended the maximum term of 90 months be imposed "if the guideline is to be used, especially in light of the fact that according to the Code of Criminal Procedure, a term of incarceration for Manslaughter is to be imprisoned at hard labor for not more than forty (40) years."
Defendant urges the sentence imposed was excessive in that it was two to three times the sentence contemplated by the guidelines and also takes issue with the trial court's reasons for imposing sentence. Finally, defendant cites other manslaughter cases where similar sentences were found to be excessive.
Under the law in effect at the time of defendant's sentencing, a trial court was required to "consider" the Felony Sentencing Guidelines promulgated by the Louisiana Sentencing Commission in imposing sentence and to state for the record the considerations taken into account and the factual basis for the sentences imposed. La.Code Crim. P. art. 894.1(A) & (C) (prior to amendment and reenactment by 1995 La. Acts No. 942, Sec. 1). Provided the court complied with these requirements of article 894.1, it had "complete discretion to reject the Guidelines and impose any sentence which [was] not constitutionally excessive, but [was] within the statutory sentencing range for the crime of which a defendant [had] been convicted...." (Footnote omitted.) State v. Smith, 93-0402, p. 3 (La.7/5/94), 93-0402 La. 7/5/94, 639 So.2d 237, 240 (on rehearing). The Supreme Court described our duty as a reviewing court as follows:
[W]here the trial judge has considered the Guidelines and imposed a sentence, adequately stating for the record the considerations taken into account and the factual basis for imposition of that sentence, an appellate court is limited to a review of the sentence imposed for constitutional excessiveness, without regard as to whether the trial judge either employed or deviated from the Guidelines.
State v. Smith, 93-0402, p. 3, 639 So.2d at 240.
In this case, the court gave the following reasons for imposing a term of seventeen years at hard labor:
The record of this case shows that Ms. Harris was charged with second degree murder of Richard Casnave. The incident having occurred on May 15, 1994. As a result of the Grand Jury Indictment on the second degree murder charge she went to trial on the murder charge. The case was tried before a jury. The jury returned a verdict of manslaughter.
I have received a number of letters from friends, family, and associates of Ms. Harris. No one has suggested that Ms. Harris is necessarily a bad person. She's worked, she's cared for herself. She's raised a family, and that family seems to be doing well. She's always been a person that has expressed concern for troubled friends. She's given them their assistance or her assistance.
The evidence that was presented in this case indicates that on the night of the killing there may have beenand in fact, *981 probably was some physical encounter between Ms. Harris and Richard Casnave. After this encounter Mr. Casnave removed himself from the bed area, went into the kitchen. There was a closet near Ms. Harris. There were also exit doors near Ms. Harris. Doors from which she could have exited the house. The closet door was blocked by a large chair. Ms. Harris moved that chair. She went into that closet. She reached into the pocket of her coat and pulled therefrom a handgun. Richard Casnave came out of the kitchen, empty handed. One shot was fired by Ms. Harris. Richard Casnave died.
As I have indicated earlier Ms. Harris was charged with second degree murder of Richard Casnave. The sentencing guidelines indicate sentencing on a typical case of manslaughter falls in grid cell 1-G. This calls for incarceration of a minimum of sixty months and a maximum of ninety months. I find that this is not a typical manslaughter. I heard the evidence in this case. Ms. Harris, except for the fact that she was incensed, could have easily exited the house if she was concerned about her safety. It's clear to me that she intentionally went to that closet, not to get clothing, but to get a gun, and that she intentionally killed Richard Casnave.
Insofar as I am concerned this falls within the category of second degree murder and that any sentence less than that to be imposed by the Court would clearly deprecate the seriousness of this offense. Accordingly, the defendant Andrienne [sic] Harris is sentenced to serve a term of seventeen years at hard labor in the custody of the Louisiana Department of Public Safety and Corrections. She is given credit for time previously served in the parish jail since her arrest for this offense.
From the foregoing it is clear that the trial court considered the guidelines and decided that a deviation was warranted. Thus, our review is limited to a review of the sentence for constitutional excessiveness. State v. Smith, 93-0402, p. 3, 639 So.2d at 240.
Defendant argues the trial court transmuted the jury's verdict of manslaughter into second degree murder when the court stated in its sentencing reasons "[i]nsofar as I am concerned this falls within the category of second degree murder and that any sentence less than that to be imposed by the Court would clearly deprecate the seriousness of this offense." However, we do not read the trial court's statement to mean it was rejecting the jury's verdict and imposing a verdict for second degree murder. The context in which the statement was made reveals the trial court was considering the factual circumstances which preceded this killing. The trial court's reasons clearly reveal the trial court did not reject the jury's verdict of manslaughter. However, the trial court did state it did not believe this was the typical manslaughter case. Thus, it was the opinion of the trial court a deviation from the guidelines was warranted.
Several cases were cited by defendant as support for her assertion that the seventeen year sentence imposed by the trial court is excessive. Each of those cases was decided before the 1992 amendment to La. R.S. 14:31(B) which increased the maximum sentence for manslaughter from twenty-one years to forty years. The seventeen year sentence defendant received for her conviction is just short of the mid-range for manslaughter.
Based upon the entirety of the record, and particularly the sentencing reasons articulated by the trial court, we find no error in the trial court's determination that this sentence was appropriate for this defendant and this offense. The seventeen year sentence in this case is not shocking to our sense of justice; accordingly, this assignment is meritless.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Judge Carl A. Guidry, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] La. C.E. art. 405(B) provides, in pertinent part, "[i]n cases in which character or a trait of character of a person is an essential element of a charge, ... proof may also be made of specific instances of his conduct."