CARTER, Judge.
The defendant, Brenda Rodrique, was charged by indictment with one count of second degree murder, a -violation of LSA-R.S. 14:30.1. She pled not .guilty. After a. jury trial, she was found guilty as charged by a unanimous verdict. She moved for post-verdict judgment of acquittal and for new trial, but the motions were denied. She was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. She now appeals, designating four assignments of error.
FACTS
During the early hours of May 30, 1996, Michael Brown’s decomposed body was discovered at his home, 979 North Acadian in Baton Rouge. The victim had bled to death, over a period of five to ten minutes, after suffering a half inch stab wound to the right side of his neck. The wound penetrated downward, injuring his internal jugular vein, right subclavian vein, and chest cavity. At the time of his autopsy, the victim’s blood alcohol level was .29.
As a result of police investigation, the defendant was questioned concerning the victim’s death. She related the following version of events. The victim fought with her after confronting her at a grocery store on Memorial Day (May 27, 1996) at approximately 3:00 p.m. During the confrontation, the victim ripped off portions of her clothing and then “drug” her to his home. The victim held her prisoner inside of the home, periodically fighting with her, until approximately 8:00 p.m. or 9:00 p.m., at which time he attempted to have anal sex with her against her will. She stabbed the victim once and then left the residence.
The State’s case cast serious doubts on the defendant’s veracity. The defendant was unable to produce the allegedly ripped clothing and no ripped clothing was found at the crime scene. She had no bruises, contusions, or scratches. The investigating detective, Detective Willard Bates, testified the crime scene did not evidence a struggle having taken place. Additionally, Detective Bates found the knife used to stab the victim, the victim’s identification card, and some keys in a paper bag under a house, approximately two miles from the crime scene — the location where the defendant vindicated she had hidden these items. There was no record of any police activity in the area of the crime scene on the day in question. Further, Detective Bates was unable to substantiate the defendant’s allegations concerning the confrontation or her being dragged to the victim’s home. He indicated he had worked and lived in the area of the crime scene for seventeen years, and if there had been a confrontation as the defendant alleged,. someone would have alerted the police, who maintain a “heavy” presence in that area anyway.
The State also presented testimony from the victim’s sister, Lisa Domino. Domino related she saw the victim between 2:00 and 3:00 on the “evening” of his death walking down the street with the defendant. Domino pulled her vehicle over and spoke to the couple. The couple was not fighting, and the defendant greeted Domino with a “Hey, Sister-in-law.” In response to State questioning, Domino stated she was positive the victim was not dragging the defendant to his house, that he was not hollering or beating up on defendant, and that her clothes were not “all torn off.”
NEW TRIAL
In assignment of error number one, the defendant contends the trial court erred in denying her motion. for a new trial. She argues her motion should have been granted *206 because it was based upon the discovery of new and material evidence that, notwithstanding the exercise of reasonable diligence by her, was not discovered before or during trial. Additionally, she argues the State was obligated to disclose the evidence to her pursuant to Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and LSA-C.Cr.P. arts. 718(1), 719, and 722.
Prior to sentencing, the defendant moved for new trial, making the “new and material evidence” and “Brady” arguments stated above, and alleging the “new” evidence consisted of a misdemeanor summons for simple battery upon her issued to the victim on or about April 24, 1996. At the hearing on the motion, defense counsel (an assistant public defender) stated he had learned of the “new” evidence from personnel working in the public defender’s office at city court. The trial court denied the motion, holding that the evidence, in and of itself, would not necessarily have changed the verdict. Further, |4the court specifically noted for the record that the evidence was easily discoverable by the defendant, that the evidence was a matter of public record, and that any due diligence and search by the public defender’s office could have turned up the evidence prior to trial. The defendant objected to the court’s ruling.
LSA-C.Cr.P. art. 851, in pertinent part, provides:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
* * * * * *
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
In a motion for new trial based upon the discovery of new and material evidence, the burden is on the defendant to show that the new evidence was not discoverable prior to or during trial and that, if the evidence had been introduced at trial, the new evidence probably would have caused the trier of fact to reach a different verdict. In evaluating whether or not the newly discovered evidence warrants a new trial, the test to be employed is not simply whether another jury might bring in a different verdict, but whether the new evidence is so material that it ought to produce a verdict different from that rendered at trial. The trial court’s denial of a motion for new trial will not be disturbed absent a clear abuse of discretion. State v. Maize, 94-0736, pp. 27-28 (La.App. 1st Cir. 5/5/95); 655 So.2d 500, 517, writ denied, 95-1894 (La.12/15/95); 664 So.2d 451, cert. denied, — U.S. -, 117 S.Ct. 268, 136 L.Ed.2d 191 (1996).
There was no abuse of discretion by the trial court in denying the motion for new trial. The defendant failed to show that the alleged “new” evidence was not discoverable prior to or during trial by the exercise of due diligence. In fact, defense counsel showed quite the opposite. In arguing his motion, defense counsel informed the court he had discovered the “new” evidence from his colleagues (who apparently stumbled upon the evidence in the public record). See LSA-R.S. 44:3 A(4)(a) |s(“[R]ecords of the issuance of a summons or citation ... shall be a public record.”) A motion for a new trial is properly rejected when it is based on evidence which should have, with reasonable diligence, been discovered before or during the trial. State v. Clark, 558 So.2d 665, 669 (La.App. 1st Cir.), writ denied, 564 So.2d 317 (La.1990).
The defendant’s “Brady ” argument was also properly rejected by the trial court. In order to establish a Brady violation, the defendant bears the burden of proving that (1) evidence was suppressed by the prosecution; (2) the evidence was favorable to the defense; and (3) the evidence was material either to guilt or to punishment. Brady v. Maryland, 373 U.S. at 87, 83 S.Ct. at 1196-97. Evidence is material “only if there is a reasonable probability that, had the evidence been disclosed to the defense, *207 the result of the proceeding would have been different. A ‘reasonable probability’ is a probability sufficient to undermine confidence in the outcome.” United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985).
In the instant case there was no Brady violation because the defendant failed to discover the “new” evidence due to a lack of due diligence, rather than any suppression by the State. Brady does not require the prosecution to conduct a defendant’s investigation or to assist in the presentation of the defense’s case. United States v. Aubin, 87 F.3d 141, 148 (5th Cir.1996), cert. denied, — U.S. -, 117 S.Ct. 965, 136 L.Ed.2d 850 (1997). Further, “when information is fully available to a defendant at the time of trial and his only reason for not obtaining and presenting the evidence to the Court is his lack of reasonable diligence, the defendant has no Brady claim.” United States v. Brown, 628 F.2d 471, 473 (5th Cir.1980). See also United States v. Mmahat, 106 F.3d 89, 94 (5th Cir.), cert. denied, — U.S. -, -, 118 S.Ct. 136, 200, 139 L.Ed.2d 84, 138 (1997) (“[i]n order to establish a Brady violation, the [defendant] must show that the information allegedly withheld from [him] was not available through due diligence.”)
We also reject the defendant’s attempt to invoke the discovery articles of the code of criminal procedure in support of her motion. The purpose of the discovery articles is to eliminate unwarranted prejudice which could arise from surprise evidence. State v. Dietrich, 567 So.2d 623, 632 (La.App. 1st Cir.), writ denied, 568 So.2d 1079 (La.1990). Matters on public record can hardly be considered “surprise evidence.” Further, in regard to LSA-C.Cr.P. arts. 718 and 719, we note that a showing that the alleged “new” evidence was in the “possession, custody, or control” of the state is required. No such showing was made, nor possible, by the defendant in the instant case because defense counsel learned of the “new” evidence from his colleagues, rather than from any source in the “possession, custody, or control” of the state. In regard to LSA-C.Cr.P. art. 722, we note that the article governs the discovery of relevant written or recorded confessions or inculpatory statements by eodefendants, and thus is inappo-site.
This assignment of error is without merit.
PRIOR CRIMES AND CHARACTER EVIDENCE
In assignment of error number two, the defendant contends the trial court erred in excluding evidence of prior crimes of the victim. In assignment of error number three, the defendant contends the trial court erred in excluding character evidence of the victim. The defendant argues she was prevented from admitting evidence of the victim’s alcoholism, violent behavior when under the influence of alcohol, and the victim’s as-saultive behavior toward others.
During trial, the State presented testimony from the victim’s sister, Lisa Domino. Defense counsel then began cross-examination of Domino. After some general questioning concerning bias, portions of her direct testimony, and the victim’s marital status, defense counsel asked Domino, “Did you or would you characterize your brother as having a drinking problem?” The State objected, and the court heard argument outside of the presence of the jury. Defense counsel argued the exception of LSA-C.E. art. 404 B(2) was applicable because the defendant lived in a familial relationship with the victim. The court held, citing the defendant’s taped statement, that she and the victim were not living together and had not lived together for two or two-and-a-half weeks and that the exception did not apply because the defendant and the victim had not been in a familial relationship at the time of the offense charged. Defense counsel ^objected and asked to make a proffer. The trial court disputed whether the same could be done in a criminal trial, but invited defense counsel to make whatever argument he wished. Defense counsel explained he was attempting to find out about the character of the victim, specifically his drinking problem. Further, defense counsel argued he was attempting to find out about any knowledge the defendant had of the victim’s abusive relationships with women. The trial court held that defense counsel was prohibited, pursuant to LSA- *208 C.E. art. 404 A(2), from introducing the character evidence. Defense counsel argued that the familial relationship exception to LSA-C.E. art. 404 A(2) applied. The court disagreed, noting that the defendant and the victim did not live in a familial relationship at the time of the commission of the crime.
Subsequently, defense counsel called the defendant’s sister, Janice Lee Williams, to the stand and presented testimony that Williams believed the defendant and the victim to be “boyfriend and girlfriend.” At the beginning of trial the next day, pursuant to defense counsel’s request, the trial court permitted defense counsel to enter into the record that he had called Williams to the stand to establish a relationship between the victim and the defendant and to establish “exculpate” (sic) behavior between the victim and the defendant. Defense counsel further explained that he was also going to call the defendant’s mother, Bernieee Harrison, but would like to proffer that Harrison would testify to the relationship and of assaultive behavior by the victim against the defendant. Defense counsel then attempted to introduce a certified true copy of a document indicating that the victim had been found guilty of the simple battery of Sylvia Brown. The State objected to the introduction of the document, and the court held that the same was irrelevant.
LSA-C.E. art. 404, in pertinent part, provides:
A. Character evidence generally. Evidence of a person’s character or a trait of his character, such as a moral quality, is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
* * * * * *
(2) Character of victim, (a) Except as provided in Article 412, evidence of a pertinent trait of character, such as a moral quality, of the victim of the crime offered by an accused ... provided that in the absence |8of evidence of a hostile demonstration or an overt act on the part of the victim at the time of the offense charged, evidence of his dangerous character is not admissible; provided further that when the accused pleads self-defense and there is a history of assaultive behavior between the victim and the accused and the accused lived in a familial or intimate relationship such as, but not limited to, the husband-wife, parent-child, or concubinage relationship, it shall not be necessary to first show a hostile demonstration or overt act on the part of the victim in order to introduce evidence of the dangerous character of the victim, including specific instances of conduct and domestic violence ... [.]
******
B. Other crimes, wrongs, or acts.
******
(2) In the absence of evidence of a hostile demonstration or an overt act on the part of the victim at the time of the offense charged, evidence of the victim’s prior threats against the accused or the accused’s state of mind as to the victim’s dangerous character is not admissible; provided that when the accused pleads self-defense and there is a history of as-saultive behavior between the victim and the accused and the accused lived in a familial or intimate relationship such as, but not limited to, the husband-wife, parent-child, or concubinage relationship, it shall not be necessary to first show a hostile demonstration or overt act on the part of the victim in order to introduce evidence of the dangerous character of the victim, including specific instances of conduct and domestic violence....
Both LSA-C.E. arts. 404 A(2) and 404 B(2) provide exceptions to their general rules of inadmissibility. However, these exceptions require the defendant to lay a foundation of either an “overt act” on the part of the victim at the time of the offense or if the defendant claims self-defense, a foundation of a history of assaultive behavior between the defendant and the victim and that the defendant and the victim lived in a familial or intimate relationship. In regard to the “overt act” exception, the fourth circuit has noted why the exception is so limited, to-wit:
That the deceased’s reputation should in such situations be accepted as affecting the defendant’s apprehensions is clear. But *209 the unconditional and indiscriminate admission of such evidence is dangerous. The danger is, not only that the deceased’s reputed character, once in evidence, will be appealed to as justifying the deliberate destruction by private hands of a detested malefactor, but also that, though no plausible situation of self-defence (sic) is otherwise evidence (sic), this evidence will be improperly used to confuse the issue as if there were real doubt about the necessity for defence (sic) and the apprehension of danger.
State v. James, 95-1182, p. 3 (La.App. 4th Cir. 6/5/96); 675 So.2d 1224, 1226.
| ¡/These same dangers are also present when the defendant attempts to use thé familial relationship exception. Accordingly, the exception must be strictly construed. In the instant case, a thorough review of the record and of the proffers indicates that the defendant failed to establish the existence of a familial relationship between herself and the victim sufficient to utilize the familial relationship exceptions of LSA-C.E. arts. 404 A(2) and 404 B(2). The familial relationship the defendant attempted to establish between herself and the victim was concubinage. However, that relationship is a relationship of sexual content in which man and woman five together as husband and wife in a state of affairs approximating marriage. Matter of Tuccio, 95-0302, p. 9 (La.App. 1st Cir. 11/16/95); 665 So.2d 531, 536. In her taped statement, the defendant indicated she had not lived with the victim for at least two weeks. This statement, like the other references concerning the defendant’s relationship with the victim, provided insufficient information concerning the critical issues of the seriousness and duration of the relationship. Cf. State v. Harris, 95-1843, p. 2 (La.App. 1st Cir. 11/8/96); 684 So.2d 976, 978, affirmed, 97-0300 (La.4/14/98); 711 So.2d 266 (“defendant had been living with the victim ... for many years prior to the incident which resulted in [the victim’s] death.”); State v. Terry, 94-0622, p. 8 (La.App. 1st Cir. 4/7/95); 654 So.2d 455, 459-60, writ denied, 95-1180 (La.10/13/95); 661 So.2d 494 (approximate eight month romantic relationship between defendant and victim involving living together). We note that the record reveals that the victim was married to a woman other than the defendant at the time of his death (even though he may not have been living with her), and that when the defendant was first approached for questioning, three days after the victim’s death, she was in the company of someone she identified as her “boyfriend.”
These assignments of error are without merit.
PROFFER
In assignment of error number four, the defendant contends the trial court erred in denying her motion to proffer testimony. The defendant cites the trial court’s comments subsequent to her question to Domino, “Did you or would you characterize your brother as having a drinking problem?”
IiqLSA-C.E. art. 103, in pertinent part, provides:
A. Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and ⅜ ⅜ ⅜ ⅜ ⅝ ⅜
2) Ruling excluding evidence. When the ruling is one excluding evidence, the substance of the evidence was made known to the court by counsel.
In the instant case, whenever the trial court ruled evidence inadmissible, it provided the defendant with the opportunity to set forth the nature of the evidence, and the defendant took advantage of the opportunity. Accordingly, this Court was able to review assignments of error numbers two and three, hereinabove. Moreover, to the extent that the trial court was reluctant to permit a formal proffer, we note that this reluctance, even if error, was harmless error on the instant record. See State v. Adams, 550 So.2d 595, 599 (La.1989) (Dennis, J., concurring) (“[t]he failure to allow a formal proffer may constitute harmless error where the nature of the evidence not admitted is otherwise sufficiently indicated, since the purpose *210 of a proffer is to inform the trial and appellate courts of the nature of that evidence.”)
This assignment or error is without merit.
CONCLUSION
For the reasons set forth in this opinion, defendant’s conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
FITZSIMMONS, J., dissents, and assigns reasons.