STATE OF LOUISIANA
v.
FREDERICK T. RABUN
No. 2008 KA 1998
Court of Appeals of Louisiana, First Circuit.
March 27, 2009.
Not Designated for Publication
SAMUEL C. D'AQUILLA, District Attorney, RONNIE O. McMILLIN, Assistant District Attorney, Attorneys for State of Louisiana
J. DAVID BOURLAND, Attorney for Defendant-Appellant Frederick T. Rabun.
BEFORE: PARRO, McCLENDON, AND WELCH, JJ.
PARRO, J.
The defendant, Frederick T. Rabun, was charged by bill of information with possession with intent to distribute a Schedule I controlled dangerous substance, MDMA (ecstasy), a violation of LSA-R.S. 40:966(A)(1). The defendant pled not guilty. After a trial by jury, the defendant was found guilty as charged. The defendant was sentenced to fifteen years of imprisonment at hard labor, with ten years to be served without the benefit of probation, parole, or suspension of sentence. The defendant now appeals, assigning error as to the sufficiency of the evidence and the effectiveness of his trial counsel. For the following reasons, we affirm the conviction and sentence.

STATEMENT OF FACTS
On or about June 22, 2006, Lieutenant Christopher Green, on patrol for the West Feliciana Parish Sheriff's Office, stopped the defendant's Ford Expedition. The traffic stop took place around 11:00 p.m. on U.S. Highway 61 due to an improper (not fully visible) display of a license plate in the rear of the vehicle. After stopping the vehicle, Lieutenant Green approached the passenger side and observed a Louisiana temporary license tag affixed in the rear, tinted window. Lieutenant Green immediately detected a slight odor of burnt marijuana and noted that the defendant was extremely nervous. According to Lieutenant Green, the defendant, seated in the front passenger position, began to breathe heavily, and a bead of sweat appeared on his top lip. The vehicle also was occupied by Roosevelt Prater, the driver, and two second-row seat passengers, Shontez Jackson and Thomas Heard. There were no passengers on the third-row seat.
Lieutenant Green asked the driver to exit the vehicle and began questioning him. When Lieutenant Green asked for consent to search the vehicle, the driver referred him to the defendant, noting that the defendant was the owner. Lieutenant Green asked the defendant to exit the vehicle, requested the defendant's consent to search the vehicle, and obtained his consent.
In conducting the search of the vehicle, Lieutenant Green discovered a Liquid Wrench spray can on the third-row seat. The bottom of the can had been replaced with woven threads. Lieutenant Green unthreaded the bottom of the can and observed the contents, several hundred suspected ecstasy pills.[1] No other objects were located in the back of the vehicle. All of the occupants of the vehicle were placed under arrest. Audio and video footage of the traffic stop was captured.

ASSIGNMENT OF ERROR NUMBER ONE
In the first assignment of error, the defendant argues that the evidence presented during the trial does not establish his guilt beyond a reasonable doubt. The defendant contends the finding of guilt constitutes an irrational decision by the trier of fact. The defendant specifically notes that there were no fingerprints or similar evidence of possession or ownership of the contraband found in the vehicle. The defendant further notes that Heard, a passenger in the vehicle, testified that he did not specifically see the defendant throw the can into the rear of the vehicle. Finally, the defendant notes that Heard testified that his statement to the police took place while he was incarcerated, weeks after he was arrested in connection with the instant incident. The defendant does not contest the evidence of intent to distribute.
In reviewing the sufficiency of the evidence to support a conviction, a Louisiana appellate court is controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). That standard of appellate review, adopted by the legislature in enacting LSA-C.Cr.P. art. 821, is whether the evidence, when viewed in the light most favorable to the prosecution, was sufficient to convince any rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt. State v. Brown, 03-0897 (La. 4/12/05), 907 So.2d 1, 18. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that, in order to convict, the trier of fact must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. State v. Graham, 02-1492 (La. App. 1st Cir. 2/14/03), 845 So.2d 416, 420.
As the trier of fact, a jury is free to accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31, 38 (La. App. 1st Cir. 1984). Moreover, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. Richardson, 459 So.2d at 38. When a case involves circumstantial evidence and the trier of fact reasonably rejects a hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. State v. Moten, 510 So.2d 55, 61 (La. App. 1st Cir.), writ denied, 514 So.2d 126 (La. 1987).
A reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. State v. Smith, 600 So.2d 1319, 1324 (La. 1992). The fact that the record contains evidence that conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. State v. Azema, 633 So.2d 723, 727 (La. App. 1st Cir. 1993), writ denied, 94-0141 (La. 4/29/94), 637 So.2d 460; State v. Quinn, 479 So.2d 592, 596 (La. App. 1st Cir. 1985).
Pursuant to LSA-R.S. 40:966(A)(1), it is unlawful for any person to knowingly or intentionally possess with intent to distribute a controlled dangerous substance classified in Schedule I. At the time of the defendant's arrest, MDMA (ecstasy) was a controlled dangerous substance pursuant to LSA-R.S. 40:964, Schedule I(C)(23).[2] The state is not required to show actual possession of the narcotic by a defendant in order to convict. Constructive possession is sufficient. A person is considered to be in constructive possession of a controlled dangerous substance if it is subject to his dominion and control, regardless of whether or not it is in his physical possession. Also, a person may be in joint possession of a drug, if he willfully and knowingly shares with another the right to control the drug. However, the mere presence in the area where narcotics are discovered, or mere association with the person who does control the drug or the area where it is located, is insufficient to support a finding of constructive possession. State v. Smith, 03-0917 (La. App. 1st Cir. 12/31/03), 868 So.2d 794, 799.
A determination of whether there is "possession" sufficient to convict depends on the peculiar facts of each case. Factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute possession include his knowledge that drugs were in the area, his relationship with the person found to be in actual possession, his access to the area where the drugs were found, evidence of recent drug use, and his physical proximity to the drugs. Smith, 868 So.2d at 799.
In accordance with a bill of sale, and as admitted by the defendant and the passengers, Lieutenant Green testified that the defendant was the owner of the vehicle. Lieutenant Green further testified that the spray can containing the evidence was on top of the third-row seat of the vehicle when it was discovered. The can was the only item located on that seat. Lieutenant Green testified that he did not test the item for fingerprints, because he did not think there would be viable prints on it after he handled and manipulated the can to remove the contents, consisting of a clear plastic bag containing the evidence. During the search, Lieutenant Green also found two empty end pieces of plastic baggies that he described as having an odor of marijuana, but containing no substance. Lieutenant Green noted that he did not submit the empty pieces of plastic baggies into evidence, as he felt there would be no possession of marijuana charges. Lieutenant Green further testified that Jackson, Prater, and Heard provided recorded statements indicating that the evidence belonged to the defendant. According to Lieutenant Green, they stated that they observed the defendant place "something" in the rear of the car after they stopped at a house in Baton Rouge. Specifically, according to the lieutenant, they stated that the defendant exited his vehicle, went in the house, stayed for a couple of minutes, came back out, and went to the rear of the Expedition and placed something on the third-row seat. They stated that the defendant was the only one who accessed the rear of the vehicle.
Thomas Heard testified during the trial. Heard stated that he had been friends with the defendant for about ten years by the time of the trial. Heard testified that on the date in question, they were coming from Bastrop, Louisiana, and planned to go to Baton Rouge to visit some of the defendant's friends. When they arrived at the residence of one of the defendant's friends, the defendant exited the vehicle while the others remained in the car. Consistent with the statements made to the police, Heard testified that the defendant threw something on the back seat of the Expedition when he returned. Heard stated that he did not know what the item was, as he was not paying attention. The group stopped at a gas station before the traffic stop occurred. According to Heard, no one went into the back of the vehicle and no one else placed any item in the rear of the vehicle except the defendant. Heard testified that the vehicle was new at the time and that the defendant may have purchased it on the date in question. Heard confirmed that marijuana was in the vehicle earlier that evening, sometime before the traffic stop, and stated that he pled guilty to simple possession of marijuana in that regard. He reiterated that the ecstasy pills did not belong to him. The defense elicited testimony regarding Heard's prior drug use and criminal background, including a prior conviction of simple burglary (which occurred over twenty years before the trial). Heard testified that he consumed a cup of vodka on the date in question but did not use any drugs or consume any other alcoholic beverages. He further testified that Jackson had a "blunt" on the date in question. Heard testified that he met with Lieutenant Green to give his statement "a couple of weeks" after his arrest, clarifying that he actually could not recall when the meeting took place and that it could have been the next day after the arrest.
The defendant was the owner of the vehicle where the evidence was found. The evidence was found on the third-row seat of the vehicle, and the defendant was observed placing an item on that seat before the stop took place. There were no other objects in the back of the vehicle. The jury was reasonable in rejecting the hypothesis of innocence that the defendant was unaware of the presence of the ecstasy and in finding that the defendant exercised dominion and control sufficient to constitute possession of the ecstasy pills in the spray can found in the rear of the defendant's vehicle. Viewing all of the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that all of the essential elements of the offense of possession with intent to distribute ecstasy were proven beyond a reasonable doubt.[3] For the above reasons, this assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO
In the second assignment of error, the defendant argues that had his trial counsel pursued a motion to suppress based upon a prolonged illegal detention following a valid traffic stop, the outcome of the trial would have been dramatically affected. The defendant contends that his attorney should have sought to have the contraband located in the vehicle suppressed as fruit of the poisonous tree. The defendant further contends that inarticulate hunches of wrongdoing, such as the faint smell of burnt marijuana, a bead of sweat, and nervousness, do not support a basis for prolonged detention following a traffic stop.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution. In assessing a claim of ineffectiveness, a two-pronged test is employed. The defendant must show that (1) his attorney's performance was deficient and (2) the deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The error is prejudicial if it was so serious as to deprive the defendant of a fair trial or "a trial whose result is reliable." Strickland, 466 U.S. at 687. In order to show prejudice, the defendant must demonstrate that, but for counsel's unprofessional conduct, the result of the proceeding would have been different. Strickland, 466 U.S. at 694; State v. Felder, 00-2887 (La. App. 1st Cir. 9/28/01), 809 So.2d 360, 369-70, writ denied, 01-3027 (La. 10/25/02), 827 So.2d 1173. Further, it is unnecessary to address the issues of both counsel's performance and prejudice to the defendant, if the defendant makes an inadequate showing on one of the components. State v. Serigny, 610 So.2d 857, 860 (La. App. 1st Cir. 1992), writ denied, 614 So.2d 1263 (La. 1993). A claim of ineffectiveness is generally relegated to post-conviction proceedings, unless the record permits definitive resolution on appeal. State v. Miller, 99-0192 (La. 9/6/00), 776 So.2d 396, 411, cert. denied, 531 U.S. 1194, 121 S.Ct. 1196, 149 LEd.2d 111 (2001).
Under our adversary system, once a defendant has the assistance of counsel, the vast array of trial decisions, strategic and tactical, that must be made before and during trial rest with an accused and his attorney. The fact that a particular strategy is unsuccessful does not establish ineffective assistance of counsel. State v. Folse, 623 So.2d 59, 71 (La. App. 1st Cir. 1993). Decisions relating to investigation, preparation, and strategy cannot possibly be reviewed on appeal. Only in an evidentiary hearing in the district court, where the defendant could present evidence beyond that contained in this record, could such allegations be sufficiently considered.[4] State v. Eames, 97-0767 (La. App. 1st Cir. 5/15/98), 714 So.2d 210, 216, writ denied, 98-1640 (La. 11/6/98), 726 So.2d 922.
The record shows that defense counsel did not file a motion to suppress. "For purposes of an ineffective assistance of counsel claim, the filing of pretrial motions is squarely within the ambit of the attorney's trial strategy, and counsel is not required to engage in futility." State v. Pendelton, 96-367 (La. App. 5th Cir. 5/28/97), 696 So.2d 144, 156, writ denied, 97-1714 (La. 12/19/97), 706 So.2d 450. In accordance with the testimony presented during the trial, Lieutenant Green conducted a valid traffic stop, as the vehicle's temporary license tag was not visible. Moreover, the defendant concedes the validity of the initial stop. The defendant nonetheless contends that the stop was illegally prolonged after Lieutenant Green used his spotlight to observe the license tag on the tinted rear window.
All persons have a constitutional right to be free from unreasonable governmental searches and seizures. U.S. Const, amends. IV and XIV; LSA-Const. art. I, § 5. A traffic stop is a type of seizure. Warrantless searches and seizures are per se unreasonable unless a court-created exception applies. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), involved one of these exceptions. In Terry, the United States Supreme Court held that a police officer need have only reasonable suspicion to perform a brief investigatory stop. The Terry court opined such a procedure may be justified though lacking probable cause if the officer acts quickly to dispel or confirm his suspicions. Terry, 392 U.S. at 28-31. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions. LSA-C.Cr.P. art. 215.1(A). When a police officer detains a vehicle beyond the initial stop, he must have a "particularized and objective basis for suspecting the particular person stopped of criminal activity." U.S. v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). A police officer may further detain an individual while he diligently pursues a means of investigation likely to confirm or dispel the particular suspicion. United States v. Sharpe, 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985). In determining whether the officer has a reasonable suspicion of some separate illegal activity that justifies further detention, the totality of the circumstances must be taken into account. State v. Kalie, 96-2650 (La. 9/19/97), 699 So.2d 879, 881 (per curiam).
According to the trial testimony and video evidence, the stop began at 11:10 p.m. Lieutenant Green immediately noted the odor of marijuana and the defendant's nervousness. The defendant and passengers consented to the search of the vehicle. The evidence was located around 11:38 p.m. and the occupants were ordered to the ground. We note that the length of the entire detention was reasonable. At any rate, the circumstances were sufficient to form the basis of a reasonable suspicion of some separate illegal activity that justified the further detention after the initial suspicion for the traffic stop was dispelled. The defendant has failed to show how the filing of a motion to suppress would not have been futile. We cannot conclude that the defendant's trial counsel's performance was deficient or that the defendant was prejudiced because a motion to suppress was not filed. The defendant has not established either prong of the Strickland test. Thus, this assignment of error lacks merit.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] According to the Louisiana State Police Crime Laboratory Scientific Analysis Report, the evidence consisted of 708 pink round tablets containing MDMA and ketamine with a net weight of 193.10 grams, and 5 green round tablets containing MDMA and ketamine with a net weight of 1.35 grams.
[2] See LSA-R.S. 40:964, Schedule I(C)(10), since the passage of 2008 La. Acts, No. 67, § 1.
[3] Factors that are useful in determining whether circumstantial evidence is sufficient to prove the intent to distribute include whether the amount of drugs created an inference of the intent to distribute and whether expert or other testimony established that the amount of drugs found in the defendant's possession is inconsistent with personal use only. See State v. Hearold, 603 So.2d 731, 735-36 (La. 1992). As noted, the defendant is not specifically contesting the evidence of intent to distribute. Out of an abundance of caution, we note that Lieutenant Green testified that the amount of ecstasy seized had a street value of over fourteen thousand dollars and consisted of too many pills for personal consumption.
[4] The defendant would have to satisfy the requirements of LSA-C.Cr.P. art. 924, et seq., in order to have such a hearing.